1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12

JOHN FUCHS,

                        Plaintiff,

      v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                  Defendant.

Case No. 3:12-cv-05034-BHS-KLS

REPORT AND RECOMMENDATION

Noted for October 5, 2012

13
14
15
16
17
18
19
20
21
22
23

Plaintiff has brought this matter for judicial review of defendant's denial of plaintiff's application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

24

FACTUAL AND PROCEDURAL HISTORY

25
26

On February 12, 2010, plaintiff filed an application for disability insurance benefits, alleging disability as of February 15, 2009, due to combat related injuries and illnesses, as well

REPORT AND RECOMMENDATION - 1

as depression and post traumatic stress disorder ("PTSD").  <u>See</u> Administrative Record ("AR")

21, 114, 131.  That application was denied upon initial administrative review on May 12, 2010,

and on reconsideration on June 14, 2010. <u>See</u> AR 21.  A hearing was held before an

administrative law judge ("ALJ") on January 12, 2011, at which plaintiff, represented by

counsel, appeared and testified, as did a vocational expert. <u>See</u> AR 37-58.

On January 25, 2011, the ALJ issued a decision in which plaintiff was determined to be

not disabled. <u>See</u> AR 21-32.  Plaintiff's request for review of the ALJ's decision was denied by

the Appeals Council on November 15, 2011, making the ALJ's decision defendant's final

decision. <u>See</u> AR 1; <u>see</u> <u>also</u> 20 C.F.R. § 404.981.  On January 23, 2012, plaintiff filed a

complaint in this Court seeking judicial review of defendany's decision. <u>See</u> ECF #3.  The

administrative record was filed with the Court on March 27, 2012. <u>See</u> ECF #10-#11.  The

parties have completed their briefing, and thus this matter is now ripe for judicial review and a

decision by the Court.

Plaintiff argues that defendant's decision should be reversed and that this matter should

be remanded for further administrative proceedings, because the ALJ erred: (1) in failing to

consider whether his migraine headaches constituted a "severe" impairment; (2) in not properly

considering the opinions of Barbara Fanin, Ph.D., his treating psychologist, and Christina C.

Kent, Psy.D., an examining psychologist; and (3) in failing to consider a military "PHYSICAL

EVALUATION BOARD" partial disability determination.  Plaintiff also argues this matter

should be remanded in order to locate and consider the progress notes of Dr. Daniel Ulrich, a

medical source who apparently had treated him as well.  For the reasons set forth below, the

undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore

recommends that defendant's decision be reversed and that this matter be remanded for further

REPORT AND RECOMMENDATION - 2

administrative proceedings. Although plaintiff requests oral argument, the undersigned finds such argument to be unnecessary here.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

REPORT AND RECOMMENDATION - 3

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their symptoms affect [his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

The ALJ in this case found plaintiff had severe impairments consisting of the following: right ear hearing loss, a small disc protrusion with complaints of low back pain and PTSD. See AR 23.  Plaintiff argues the ALJ erred in failing to also consider his migraine headaches to be severe.  The undersigned disagrees.  Although the record does reveal that plaintiff has been diagnosed as having headaches or a headache syndrome, and that he has reported significant headache-related symptoms and limitations, it contains no objective medical evidence that any actual work-related restrictions have resulted therefrom or been ascribed thereto. See AR 210-11, 215, 218-19, 224, 236, 240-41, 278, 281, 287, 372, 413-19, 421, 423, 425, 427, 429, 431, 433, 435, 437, 439, 442, 445, 448, 451, 457, 460, 463, 466, 469, 485, 511, 514, 535, 572-73, 581, 601, 603, 610, 653, 664, 703, 705, 757, 760, 764, 766, 769, 782.

While it is true that the ALJ must take into account a claimant's pain and other symptoms at step two (see 20 C.F.R. § 404.1529), the severity determination is made solely on the basis of the objective medical evidence in the record:

> A determination that an impairment(s) is not severe requires a careful
> evaluation of the medical findings which describe the impairment(s) and an
> informed judgment about its (their) limiting effects on the individual's
> physical and mental ability(ies) to perform basic work activities; thus, an

REPORT AND RECOMMENDATION - 4

assessment of function is inherent in the medical evaluation process itself. *At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities. . . .*

SSR 85-28, 1985 WL 56856 *4 (emphasis added).  In addition, the ALJ found plaintiff was not entirely credible in regard to his subjective complaints (see AR 25, 29-30) – a finding not challenged by plaintiff – and thus the ALJ was not required to accept plaintiff's self-reports concerning his headache.  As such, the undersigned finds no error on the part of the ALJ here.

II.     The ALJ's Evaluation of Dr. Fannin's and Dr. Kent's Opinions

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

REPORT AND RECOMMENDATION - 5

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Fannin

Plaintiff challenges the following findings made by the ALJ:

With respect to claimant's psychological impairment, though claimant is diagnosed with PTSD, he appears to have responded positively to treatment, counseling and medication.  Claimant had a normal brain MRI in January of 2010 (Ex. 16F/2).  Approximately one year after claimant's alleged onset,

claimant is consistently diagnosed with PTSD.  In January of 2010 Barbara Fannin, PhD, gave him a [global assessment of functioning ("]GAF["]) score of 65[1] (Ex. 13F/4).  Notwithstanding such diagnosis, in January of 2010, [c]laimant reported continued positive mood, good sleep, the absence of anxiety, no longer isolating himself and engaging again in pleasurable activities (Ex. 3F/6).  In February of 2010, claimant stated, and Dr. Fannin concurred, that his mood swings and anxiety were no longer trauma related.  Claimant no longer had intrusive combat memories (Ex. 3F/3).  One month later, Dr. Fannin noted claimant's mood improvement with increased medication and discussed changing sessions to biweekly to begin transitioning toward termination (Ex. 3F/2).  In June, claimant proffered that prior counseling was "very helpful" (Ex. 17F/70).

Dr. Fannin opined claimant had moderate difficulties in understanding and remembering simple work instructions, mild difficulties in getting along with supervisors and coworkers and adapting to the usual demands of a low stress job and no difficulties maintaining regular job attendance and performing a simple work routine on a sustained basis under ordinary supervision (Ex. 5F/2).  As claimant's treating provider, Dr. Fannin's opinion is given significant weight.  Her conclusions about claimant's only mild difficulties in adaptation, attendance and the ability to perform simple work routines are well supported by the record, examination, the opinions of other doctors and claimant's activities of daily living.  Her conclusions about his memory difficulties, however, are not supported by the examination results of the consultative examiner[, Christina C. Kent, Psy.D].  Still, according [to] Dr. Fannin great deference as a treating doctor, the undersigned limits claimant to unskilled and routine work.  Additionally, though Dr. Fannin concluded claimant has only mild difficulties in getting along with supervisors and coworkers, with an abundance of caution and giving full credence to claimant's statements about his anxiety and low tolerance for other people, the undersigned further limits claimant to no interaction with the general public and superficial interaction with co-workers.

AR 27-28 (internal footnote omitted).  Specifically, plaintiff argues the ALJ failed to provide specific and legitimate reasons for not fully crediting Dr. Fannin's opinion.  The undersigned, however, disagrees.

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  As noted by the ALJ (see AR 27 n. 1), "[a] GAF score of 61-70 reflects mild symptoms or "some difficulty[in social, occupational, or school functioning], but the individual 'generally function[s] pretty well." Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002) (quoting American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994)).

REPORT AND RECOMMENDATION - 7

First, plaintiff asserts the ALJ erred in relying on the examination results produced by Dr. Kent, because the psychological testing she performed was incomplete due to plaintiff becoming angry and terminating the testing process. See AR 487-88.  Because the testing was incomplete, plaintiff argues, it is unclear as to whether Dr. Kent fully tested his memory to evaluate any difficulties he may have had.  But Dr. Kent gave no indication in her evaluation report that plaintiff's termination of the testing process compromised her ability to evaluate or opine as to his mental functional capabilities. See AR 484-89.  Nor is the ALJ – or the Court for that matter – qualified to second-guess Dr. Kent in her interpretation of the testing results. See Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony); Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for that of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion).

Plaintiff further argues the moderate restriction in the ability to understand and remember even simple work instructions assessed by Dr. Fannin (see AR 481), is not inconsistent with his performance during the above psychological testing or with the findings Dr. Kent provided.  Dr. Kent, however, expressly opined that plaintiff could "understand and follow simple work-related . . . verbal and written instructions," and "would likely be able to perform simple and repetitive work routines on a sustained basis in an employment setting." AR 489.  Thus, Dr. Kent's opinion on this issue is not at all consistent with – and, indeed, contradicts – that of Dr. Fannin.  Further, as discussed above, nothing in Dr. Kent's evaluation report indicates plaintiff's termination of the psychological testing she performed compromised her ability to either evaluate or provide an

opinion as to his mental functioning.

Finally, it is true as noted above, that in general greater weight or deference is given to the opinion of a treating medical source than to that of one who only examines the claimant.  But also as noted above, the ALJ can reject the contradicted opinion of a treating medical source if he or she gives specific and legitimate reasons supported by substantial evidence, which once more as discussed above, were given by the ALJ here.  Accordingly, the undersigned finds the ALJ did not commit any error in rejecting Dr. Fannin's opinion.

B.    Dr. Kent

Plaintiff challenges as well the ALJ's following findings:

Christina Kent, PsyD, conducted a consultative examination in April of 2010. On examination, claimant presented as depressed and anxious.  Claimant stated he did not like going out or being in crowds (Ex. 7F/1-2).  Claimant endorsed symptoms of self-isolation, bad dreams, difficulty in getting along with others, anhedonia, racing thoughts, problems with sleep and strange and intrusive thoughts (Ex. 7F/3).  On the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS – III), claimant's concentration was adequate through subtest four, however, during subtest five after answering a question incorrectly, he became angry and refused to continue the evaluation process (Ex. 7F/5).  Dr. Kent opined claimant's history and presentation supports a PTSD diagnosis.  She concluded that his symptoms of depression and anxiety are subsumed under the PTSD diagnosis.  Claimant received a GAF score of 50[2] (Ex. 7F/5).  The results of cognitive testing revealed claimant is able to understand simple and more complex instructions and process both simple and complex information faster than average (Ex. 7F/5).  Claimant's level of cognitive functioning was estimated to be high average (Ex. 7F/5).  Claimant would likely be able to understand and follow simple work-related verbal and written instructions and perform simple and repetitive work routines on a sustained basis in an employment setting.  Claimant would likely have difficulty getting along with supervisors and coworkers.  His ability to maintain regular attendance and perform work-related tasks is compromised by his mental health issues (Ex. 7F/6).  The undersigned gives significant

---

[2] Again as noted by the ALJ, "[a] GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta , 500 F.3d at 1076 n.1 (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 34); see also England, 490 F.3d at 1023, n.8 (8th Cir. 2007) (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

REPORT AND RECOMMENDATION - 9

weight to Dr. [Kent's] opinion except her conclusions regarding claimant's
attendance issues; nowhere in the treatment records are such difficulties noted.
The undersigned addresses claimant's difficulties getting along with others by
limiting him to no interaction with the general public and superficial
interaction with co-workers.

AR 28 (internal footnote omitted).  As with the ALJ's stated reasons for rejecting Dr. Fannin's

opinion, plaintiff argues the ones the ALJ gave for not fully adopting those of Dr. Kent also were

neither specific nor legitimate.  The undersigned agrees the ALJ failed to give such reasons with

regard to Dr. Kent's opinions concerning difficulties in maintaining attendance, performing work

tasks and getting along with supervisors.

 As pointed out by plaintiff, the ALJ tacitly rejected Dr. Kent's opinion that he "would

very likely have difficulty getting along with supervisors" (AR 489), by not assessing plaintiff

with any limitation in that regard (see AR 25), but did not provide any reasons for doing so (see

AR 28).  This was error. See Lester, 81 F.3d at 830-31 (examining physician's opinion "can only

be rejected for specific and legitimate reasons that are supported by substantial evidence in the

record").  As for Dr. Kent's opinion that plaintiff's "ability to maintain regular attendance and

perform work-related tasks [wa]s compromised by his mental health issues" (AR 489), contrary

to the ALJ's statement the record does contain evidence of difficulties in both areas (see, e.g.,

AR 211 (plaintiff "presented with difficulty attending to tasks secondary to pain"), 236 (plaintiff

"'flipped out' at work," resulting in him throwing things and "storm[ing] off"), 240 (plaintiff's

mental health counselor reporting having spoken to plaintiff's company commander to remove

him from "stressful work environment causing [his] current panic attack until a more definitive

plan [wa]s in place," and plaintiff's company commander having complied), 372 (another mental

health counselor reporting plaintiff "would have not been able to complete the [testing] session

without rest periods").  Accordingly, the ALJ erred in rejecting Dr. Kent's opinion here as well.

REPORT AND RECOMMENDATION - 10

III.    The Physical Evaluation Board Partial Disability Determination

        The record contains a "PHYSICAL EVALUATION BOARD" determination of partial

disability in regard to plaintiff's time spent in the military, which found in relevant part that:

"Criteria for a rating of 50% [disability] are met based on reduced reliability and productivity

due to the manifestation of symptoms of [plaintiff's PTSD], including reduced ability to

concentrate and remember, increase in irritability, and difficulty in establishing and maintaining

effective work and social relationships." AR 477.  Because of that 50% rating, though, plaintiff

was placed on the "Temporary Disability Retired List," as "a permanent [disability] evaluation

[wa]s not yet possible." Id.  In his decision the ALJ did not address this disability determination,

but instead gave "significant weight to the [United States Department of Veterans Affairs

("]VA["]) determination of a 60% disability," which plaintiff testified to at the hearing, but for

which there does not appear to be written documentation in the record. AR 30; see also AR 40.

        While the ALJ did not expressly discount the VA determination, he noted it was "not a

full disability benefit," and went on to state that he did not find plaintiff's mental impairments

justified functional limitations beyond the following: "**unskilled work with routine tasks, no

interaction with the general public and superficial interaction with co-workers**." AR 25

(emphasis in original), 30.  As pointed out by plaintiff and noted above, the ALJ must explain

why "significant probative evidence has been rejected." Vincent, 739 F.3d at 1394-95; Cotter,

642 F.2d at 706-07; Garfield, 732 F.2d at 610.  Plaintiff does not challenge the ALJ's treatment

of plaintiff's VA disability rating.  Nor does the undersigned find fault therewith, as there is no

indication what the specific basis for that rating was in the record. See AR 40.

        The undersigned does agree with plaintiff, however, that while the Physical Evaluation

Board partial disability determination is not a VA rating decision, it still constitutes significant

REPORT AND RECOMMENDATION - 11

probative evidence the ALJ was required to consider.  Contrary to the 60% VA rating decision, the 50% Physical Evaluation Board determination specifically references plaintiff's "reduced reliability and productivity due to the manifestation of" his PTSD symptoms in finding him to be entitled to partial disability.  AR 477.  The reference to reduced reliability and productively also is consistent, at least in general, with Dr. Kent's opinion on the same issue, which, as discussed above, the ALJ erred in rejecting.  Thus, here too the ALJ erred.

IV.    Dr. Ulrich's Treatment Notes

      The record also contains references to plaintiff seeing Dr. Daniel Ulrich, indicating a treatment relationship of some sort.  See AR 231 (plaintiff "[h]as an app[ointment]t with . . . Dr. Ulhrich" [sic]), 236 (plaintiff "may have underlying ADHD which Dr. Ulrich will address at his next visit").  Dr. Kent also indicates in her evaluation report having received the following: "Health Records, Schofield Barracks (Ulrich, Daniel 10-20-09)." AR 484.  As plaintiff points out, there do not appear to be any such "Health Records" in the record before the Court.  But plaintiff also has not shown what, if anything, those records would show, even if they could be obtained.  The undersigned, therefore, declines to remand this matter for that purpose, although remand is proper for the other reasons discussed elsewhere herein.

VIII.    This Matter Should Be Remanded for Further Administrative Proceedings

      The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate

REPORT AND RECOMMENDATION - 12

1    award of benefits is appropriate." Id.

2         Benefits may be awarded where "the record has been fully developed" and "further

3    administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan

4    v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded

5    where:

6
             (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the
7            claimant's] evidence, (2) there are no outstanding issues that must be resolved
             before a determination of disability can be made, and (3) it is clear from the
8            record that the ALJ would be required to find the claimant disabled were such
             evidence credited.
9

10   Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

11   Because issues still remain in this case regarding the medical and other evidence in the record –

12   namely, the Physical Evaluation Board partial disability determination – concerning plaintiff's

13   mental limitations, and thus his residual functional capacity and ability to perform other jobs

14   existing in significant numbers in the national economy,[3] remand for further administrative

15   proceedings is warranted.

16

17

18   [3] If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation
     process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her
19   "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual
     functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past
20   relevant work, and at step five to determine whether he or she can do other work. See id.  It is thus what the claimant
     "can still do despite his or her limitations." Id.
21        A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform
     based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the
22   claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and
     restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is
23   required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot
     reasonably be accepted as consistent with the medical or other evidence." Id. at *7.
24        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process
     the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See
25   Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this
     through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the
26   "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).
     An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ.
     See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.
     1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as

REPORT AND RECOMMENDATION - 13

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 5, 2012**, as noted in the caption.

DATED this 18th day of September, 2012.

Karen L. Strombom
United States Magistrate Judge

---

substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

As noted above, the ALJ's residual functional capacity assessment consisted of limiting plaintiff to being able to perform "**unskilled work with routine tasks, no interaction with the general public and superficial interaction with co-workers**." AR 25 (emphasis in original).  At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 55.  In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. See AR 56.  Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 31.  As discussed above, however, the ALJ failed to properly consider the opinion of Dr. Kent and the Physical Evaluation Board partial disability determination, thereby calling into question the accuracy of the ALJ's RFC assessment, and thus the propriety of his step five finding.

REPORT AND RECOMMENDATION - 14